UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Kelly Mailhot et al.</u>

   v.                                      Case No. 16-cv-43-JL

<u>Direct Recovery Services, LLC</u>


**REPORT AND RECOMMENDATION**

The plaintiffs, Kelly Mailhot and Dave Mailhot, brought suit against Direct Recovery Services ("DRS") alleging claims arising out of communications that DRS made to the plaintiffs in an attempt to collect a debt. On February 28, 2017, the Clerk of Court entered default against DRS for failure to respond to service. <u>See</u> doc. no. 13. Before the court for Report and Recommendation is the plaintiffs' motion for default judgment (doc. no. 14) pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons that follow, the court recommends that the plaintiffs' motion be granted in part.


**Standard of Review**

After default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); <u>see also</u> <u>KPS & Assocs., Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 19 (1st Cir. 2003). Before entering a default judgment, the court "may

examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcón v. Autoridad de Energía Electríca, 301 F.3d 1, 2 (1st Cir. 2002) (quoting Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  The defaulted party is "taken to have conceded the truth of the factual allegations in the complaint . . . ." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999).  The defaulted party does not, however, "admit the legal sufficiency of those claims." 10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013).  In other words, before entering default judgment, the court must determine whether the admitted facts state actionable claims.  See Hop Hing Produces Inc. v. X & L Supermarket, Inc., No. CV 2012-1401(ARR)(MDG), 2013 WL 1232919, at *2 (E.D.N.Y. Mar. 4, 2013); E. Armata, Inc. v. 27 Farmers Market, Inc., No. 08-5212 (KSH), 2009 WL 2386074, at *2 (D.N.J. July 31, 2009).

## Background

By virtue of its default, DRS concedes the following facts alleged in the amended complaint:

Kelly Mailhot resides in Hillsborough County, New Hampshire.  Dave Mailhot, her father, also lives in Hillsborough

County.[1]  DRS was attempting to collect an alleged debt from Kelly.  Dave does not live with Kelly, and is not liable for the alleged debt.

Both Dave and Kelly received communications from DRS concerning the debt.  DRS sent Dave a letter, dated October 28, 2015, regarding an outstanding balance of $780 that DRS had been authorized to collect.  See doc. no. 8-1.  DRS also left the following two messages on Dave's cell phone between March and November of 2015:

> 1) [Computerized voice] This is your final notice.  Federal law designates this matter as a confidential notice for Kelly Mailhot.  If this is not Kelly Mailhot, hang up now.
>
> [Human voice]  Hello this is Sylvia Holt.  Unfortunately we received a notice of escalation concerning your file this morning.  Our client has asked us to cease all voluntary communication and expedite paperwork immediately.  Please understand that we only have until the end of the day to reach you.  Please contact us or have your attorney call.  Understand that a failure to communicate will result in your paperwork being expedited and we will no longer be in a position to help you.  Please call 844-284-5550.  Again, I apologize for the aggravation and the short notice.  The number is 844-284-5550.  Thank you.
>
> 2) Hi Dave, Sharon Hewes calling here.  We spoke a few hours ago in reference to your daughter Kelly.  If you could give me a call back, I wanted to see if you received the e-mail.  My number here, which is my direct line, is 844-780-6747.  Again, 844-780-6747.  If you call and I don't answer, just leave a quick voicemail and I'll definitely give you a call right back.

---

[1] As both plaintiffs share a last name, the court will refer to them by their first names in this Report and Recommendation.

Amend. Compl. ¶¶ 23(a), 24(a) (doc. no. 8) (formatting and punctuation altered).

Kelly received three messages from DRS. The first, left on her cell phone at some point between March and November of 2015, was identical to the first message received by Dave, as detailed above, except that it included the following additional partial message: ". . . in our office Wednesday, Thursday, or Friday of this week. Otherwise please do call right away because there have been some changes made and we do need to speak with you. Thank you. The number is 855-269-9628. Again, 855-269-9628. This is concerning your account here."[2] Id. ¶ 25(a), (b) (formatting and punctuation altered). Kelly also received the following messages on October 1, 2015, and October 9, 2015, respectively: 1) "Give me a call back. It's very important. I need to speak with you."; and 2) "Please give me a call back. It's very important. I need to talk to you." Id. ¶¶ 63, 64.

The amended complaint also references three messages left by DRS that failed to identify the name of the caller and failed to disclose the person from whom the debt collector was attempting to collect the debt. The amended complaint does not

---

[2] The amended complaint indicates that this message "start[ed] in the middle with Sylvia Holt's pre-recorded message." Amend. Compl. ¶ 25(b). It is unclear to the court what exactly this means.

identify who received these messages, when they were received, or if they correspond with any of the messages quoted in the amended complaint.

The amended complaint alleges that the plaintiffs did not give consent to be contacted on their cell phones. The amended complaint further alleges that the plaintiffs received calls from various numbers, some of which had New Hampshire area codes, and one of which was associated with the New Hampshire court system. The amended complaint alleges that some or all of these calls appear to have been automated.

Finally, the amended complaint alleges that DRS does not have a New Hampshire office, and that DRS is not registered with the New Hampshire Secretary of State.

## Discussion

The plaintiffs seek statutory damages under two federal provisions: (1) the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I) and (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Counts II through VI).[3] They seek $2,000 in total statutory damages under

---

[3] In their amended complaint, the plaintiffs also allege violations of the New Hampshire Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA"), N.H. Rev. Stat. Ann. ("RSA") ch. 358-C (Count VII) and the New Hampshire Consumer Protection Act ("CPA"), RSA ch. 358-A (Counts VIII

5

the TCPA and $4,000 in total statutory damages under the FDCPA.
They also seek an award of attorney's fees and costs.

**I.  TCPA**

Under the TCPA, it is unlawful, subject to certain exceptions not applicable here,

> for any person within the United States . . . to make any call (other than a call made for emergency purposes or made without prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (formatting altered).  A person or entity may bring a private action for a violation of the TCPA and may recover, in lieu of actual damages, "$500 in damages for each such violation . . . ."  Id. § 227(b)(3)(B).  "The TCPA is essentially a strict liability statute . . . ," and a party need not be the "intended recipient" of the call in order to recover thereunder.  Davis v. Diversified Consultants, Inc., 36 F. Supp. 3d 217, 223, 224 (D. Mass. 2014) (internal quotations omitted) (citation omitted).

In their amended complaint, the plaintiffs allege that they each received identical messages from DRS that included both a

---

through X), as well as a state common-law claim for invasion of privacy (Count XI).  The plaintiffs have since affirmatively waived their claims for damages under these counts.  See doc. no. 14 at ¶ 7; doc. no. 15.  The court accordingly will not address these counts herein, and the district judge should decline to enter default judgment on these claims.

6

"computerized" voice and what can reasonably be construed to be a prerecorded voice. See Amend. Compl. ¶¶ 23(a), 25(a). The plaintiffs further allege that they did not give DRS permission to contact them on their cell phones. Assuming the truth of these allegations, the court concludes that each of these calls violated the TCPA.

The amended complaint does not, however, state actionable claims under the TCPA with respect to any of the remaining calls. There is nothing in the complaint from which the court can reasonably infer that any of these calls utilized an artificial and/or prerecorded voice. Nor, despite the plaintiffs' conclusory assertion to the contrary, are there sufficient allegations in the complaint to support the plausible conclusion that these calls were made using an automatic telephone dialing system. The plaintiffs appear to suggest that the mere fact these calls purportedly came from several different telephone numbers demonstrates that they were made using an automatic dialing system. The court cannot find any support for such a premise, and accordingly declines to find violations of the TCPA on this basis.

In sum, the amended complaint plausibly alleges two violations of the TCPA by DRS: one with respect to Kelly and one

with respect to Dave.  The plaintiffs are accordingly entitled to default judgment on Count I only as to these two calls.

**II. FDCPA**

Both plaintiffs allege several violations of the FDCPA by DRS.  "In order to prevail on an FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA."  Halsey v. Litton Loan Servicing, No. 12-cv-511-PB, 2013 WL 3754919, at *3 (D.N.H. July 13, 2013) (internal quotation marks and citations omitted).  By virtue of its default, DRS concedes that it is a debt collector for FDCPA purposes.  DRS also concedes, based on the allegations in the complaint, that Kelly was the object of collection arising from a consumer debt.

The allegations in the complaint do not, however, support the conclusion that DRS ever attempted to collect this debt from Dave.  The amended complaint concedes that Dave is not liable for the debt DRS was seeking to collect.  Moreover, there are no factual allegations in the complaint that support an inference that DRS ever contacted Dave for the purpose of collecting this debt from him.  For instance, both messages left on Dave's cell

phone make explicit reference to Kelly,[4] and there is nothing in either message to suggest that DRS sought payment from Dave instead. Similarly, though the amended complaint alleges that DRS sent Dave a letter on October 28, 2015, there are no allegations that this letter sought to collect the debt from Dave, and the sole version of the letter in the record is redacted such that it is impossible to determine from whom specifically DRS sought to collect the debt. See doc. no. 8-1. The mere allegation in the amended complaint that DRS "attempted to collect such alleged debt from the other plaintiffs," Amend. Compl. ¶ 16, is insufficient, on its own, to satisfy this first element. Cf. Forcier v. Creditors Specialty Serv., Inc., No. 13-cv-444-LM, 2014 WL 6473043, at *3 (D.N.H. Nov. 17, 2014) (citations omitted) (noting that conclusory allegations and allegations tracking statutory requirements are insufficient to support an entry of default judgment). Thus, the facts alleged, when assumed true, fail to plausibly demonstrate that Dave was ever the object of collection. For this reason, Dave is not entitled to a default judgment on any of his FDCPA claims

---

[4] The first message states: "Federal law designates this matter as a confidential notice for **Kelly Mailhot**. If this is not **Kelly Mailhot** hang up now." Amend. Compl. ¶ 23(a) (emphasis added). The second message states: "We spoke a few hours ago **in reference to your daughter Kelly**." Id. ¶ 24(a) (emphasis added).

against DRS. Cf. Christy v. EOS CCA, 905 F. Supp. 2d 648, 653 (E.D. Pa. 2012) (concluding that a father, who was not liable for his adult daughter's debt, was not a "consumer" for FDCPA purposes).

For her part, Kelly alleges violations of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692f, 1692g(a), and 1692g(b). The court turns first to her claims under § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of a debt." This section contains a non-exhaustive list of proscribed conduct. See id. §§ 1692e(1)–(16). It also generally prohibits, among other things, communications that create "a false sense of urgency." See Kimbro v. I.C. Sys., Inc., 336 F. Supp. 2d 188, 192 (D. Conn. 2004).

"[F]or FDCPA purposes, [a communication] is to be viewed from the perspective of the hypothetical unsophisticated consumer." Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 103 (1st Cir. 2014). This standard is similar to the "least sophisticated consumer" standard employed by the majority of circuits. Id. at 103 n.4; see also Waters v. J.C. Christensen & Assoc., Inc., No. 08-11795-NH, 2011 WL 1344452, at *8 (D. Mass. Mar 4, 2011) ("[D]ifferentiating between the least

sophisticated consumer and the unsophisticated consumer standards would involve the splitting of hairs." (internal quotation marks and citations omitted)). "The standard protects all consumers, including the inexperienced, the untrained, and the credulous." Pollard, 766 F.3d at 103.

Here, Kelly has plausibly alleged communications that create a false sense of urgency. The amended complaint alleges that Kelly received messages that stated, among other things, the following:

- "Our client has asked us to cease all voluntary communication and expedite paperwork immediately." Amend. Compl. ¶ 25(a).

- "We only have until the end of the day to reach you." Id.

- "Understand that a failure to communicate will result in your paperwork being expedited and we will no longer be in a position to help you." Id.

- "Please call right away because there have been some changes made and we do need to speak with you." Id. ¶ 25(b).

- "Give me a call back. It's very important. I do need to speak with you." Id. ¶ 63.

- "Please give me a call back. It's very important. I need to talk to you." Id. ¶ 64.

These statements could be interpreted by an unsophisticated consumer as creating a sense of urgency. The amended complaint further alleges that these statements were made over an eight-

11

month period. When assumed true, this allegation supports the conclusion that the sense of urgency created by these statements was false. The amended complaint accordingly states an actionable claim under § 1692e with respect to Kelly.

Because Kelly is entitled to default judgment based on DRS's general violation of § 1692e, the court does not address her remaining FDCPA claims. Rhodes v. Olson Assocs., P.C., 83 F. Supp. 3d 1096, 1103 (D. Colo. 2015) ("Plaintiff need demonstrate only one violation of its provisions to be entitled to a favorable judgment.").

## III. Damages

As noted, the plaintiffs only seek statutory damages. Under the TCPA, the prevailing party is entitled to statutory damages of $500 for each violation. 47 U.S.C. § 227(b)(3)(B). As discussed above, Kelly and Dave are each entitled to judgment on one violation of the TCPA by DRS. The court accordingly recommends that the district judge award each plaintiff $500 in statutory damages under the TCPA.

"[S]tatutory damages under the FDCPA are limited to $1,000 per lawsuit, not $1,000 per violation." Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 2d 1222, 1238 (C.D. Cal. 2007); see also Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 650-51 (6th Cir. 1994) (en banc); Williams v. Pressler and Pressler,

LLP, No. 11-7296 (KSH), 2013 WL 5435068, at *10 (D.N.J. Sept. 27, 2013); Stilz v. Global Cash Network, Inc., No. 10 CV 1998, 2010 WL 3975588, at *4 (N.D. Ill. Oct. 7, 2010). "Whether statutory damages should be granted, and, if so, whether the full amount of $1,000 should be allowed, is committed to the discretion of the court. In exercising that discretion, courts look to the nature of the violation. If the violation is especially egregious, or if plaintiffs show that it was repeated and persistent, courts are more likely to award the full amount." Manopla v. Bryant, Hodge and Assoc., LLC, No. 13-338 (JAP), 2014 WL 793555, at *6 (D.N.J. Feb. 26, 2014) (internal citations omitted).

In view of the facts alleged in the amended complaint, the court considers $1,000 in statutory damages to be an appropriate award. The amended complaint alleges that DRS created a false sense of urgency through multiple phone calls, which seemingly occurred over a period of several months. And though Dave cannot recover in his own right under the FDCPA, the amended complaint further alleges that DRS sent Dave multiple communications, at least one of which an unsophisticated consumer might reasonably interpret as creating a false sense of urgency. See Amend. Compl. ¶ 23(a). There are also facts in the record arguably demonstrating that DRS attempted to thwart

or evade service of process in this case.  See Feb. 27, 2017 Order.  Under these circumstances, the court concludes that an award of statutory damages in the full amount of $1,000 is justified.

In sum, the court concludes: 1) that Dave and Kelly are each entitled to an award of $500 in statutory damages under the TCPA, and 2) Kelly is entitled to an award of $1,000 in statutory damages under the FDCPA.  The court accordingly recommends that the district judge award Dave $500 in damages and Kelly $1,500 in damages, for a total damages award of $2,000.

**IV.  Attorney's Fees**

Under the FDCPA, a prevailing party is entitled to "reasonable attorney's fees as determined by the court."  French v. Corp. Receivables, Inc., 489 F.3d 402, 403 (1st Cir. 2007) (internal quotations and ellipsis omitted) (quoting 15 U.S.C. § 1692k(a)(3)).  "An award of attorney's fees to successful plaintiffs under the FDCPA is obligatory."  Id.

An award of reasonable attorney's fees is typically calculated by the lodestar method in which the court multiplies the hours productively spent by a reasonable hourly rate. Spooner v. EEN, Inc., 644 F.3d 62, 67-68 (1st Cir. 2011). "'Reasonable hourly rates will vary depending on the nature of

14

the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria.'" Hutchison ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011). (quoting United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008)). The determination of what constitutes a "reasonable" fee is left to the court's discretion. de Jesus v. Banco Popular de P.R., 918 F.2d 232, 233-34 (1st Cir. 1990).

The party seeking a fee award bears the burden of producing materials to support the request. Hutchison, 636 F.3d at 13. "Appropriate supporting documentation includes counsel's contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel." Spooner, 644 F.3d at 68; see also Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir. 2007)).

The plaintiffs seek an award of $6,143.33 in attorney's fees and $551.83 in costs. Plaintiffs' counsel submits a sworn affidavit in support of this request. In this affidavit, plaintiffs' counsel states that he and members of his firm have spent at least twenty-one hours on this matter. Plaintiffs' counsel states that work on this case has been charged at a rate of $295 per hour for attorney time and $125 per hour for staff

15

time.  Plaintiffs' counsel states that he has previously been assigned an hourly rate of $325 per hour in other matters, and correctly points out in the motion for default judgment that this court has previously approved a rate of $295 per hour in a similar case that he brought.  See doc. no. 14 at 2 n. 1 (citing Forcier, 2014 WL 6473043, at *14).  The court concludes that the fees requested are reasonable in light of these representations.  The court further concludes that the costs requested are reasonable in light of the filing fee in this district and the multiple attempts undertaken by the plaintiffs to serve process on DRS.

Accordingly, the court recommends that the district judge award the plaintiffs $6,143.33 in attorney's fees and $551.83 in costs.

## Conclusion

For the foregoing reasons, the court recommends that the district judge: 1) grant default judgment to both plaintiffs on their TCPA claims; 2) grant default judgment to Kelly on her FDCPA claim under § 1692e; 3) award each plaintiff $500 in damages for their TCPA claims; 4) award Kelly $1,000 in damages for her FDCPA claim; and 5) award the plaintiffs $6,143.33 in attorney's fees and $561.83 in costs.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

May 10, 2017

cc: John F. Skinner, III, Esq.